UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **J.H., a minor, by his parents** **JOHN DOE and JANE DOE,**        Plaintiffs, <br><br> v. <br><br> **OLENTANGY LOCAL** **SCHOOL DISTRICT,** 7840 Graphics Way, Lewis Center, Ohio 43035; <br><br> **BRADY FORD,** **in his individual capacity,** c/o Olentangy Orange High School, 2840 East Orange Road, Lewis Center, Ohio 43035; <br><br> **ANTHONY GRIFFIN,** **in his individual capacity,** c/o Olentangy Orange High School, 2840 East Orange Road, Lewis Center, Ohio 43035; <br><br> **ANDRÉ NASH JR.,** **in his individual capacity,** c/o Olentangy Orange High School, 2840 East Orange Road, Lewis Center, Ohio 43035; <br><br> **WES SCHROEDER,** **in his individual capacity,** c/o Olentangy Orange High School, 2840 East Orange Road, Lewis Center, Ohio 43035; <br><br> **ELLIE ELLIS,** **in her individual capacity,** c/o Olentangy Orange High School, 2840 East Orange Road, Lewis Center, Ohio 43035; <br><br> **RYAN SPARKS,** **in his individual capacity,** c/o Olentangy Orange High School, 2840 East Orange Road, Lewis Center, Ohio 43035, Defendants. | Case No. <br><br>    Judge <br><br> Magistrate Judge |

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs J.H., a minor, by his parents John Doe and Jane Doe (collectively, "Plaintiffs"), for their Complaint against Defendants Olentangy Local School District (the "District"), Brady Ford, Anthony Griffin, André Nash Jr., Wes Schroeder, Ellie Ellis, and Ryan Sparks (collectively, "Defendants"), state as follows:

### PARTIES

1. Plaintiff J.H. is a minor child who resides in Delaware County, Ohio. At all times relevant to this Complaint, J.H. was a student at Olentangy Orange High School and a member of the school's football program. J.H. proceeds under a pseudonym pursuant to the Motion to Proceed Under Pseudonym filed contemporaneously herewith.

2. Plaintiffs John Doe and Jane Doe are the parents of J.H. and bring this action on his behalf. They reside in Delaware County, Ohio. They proceed under pseudonyms to protect their minor child's identity.

3. Defendant Olentangy Local School District is a political subdivision of the State of Ohio and a recipient of federal financial assistance. The District operates Olentangy Orange High School.

4. Defendant Brady Ford is a football coach at Olentangy Orange High School. At all times relevant hereto, Coach Ford was acting under color of state law and within the scope of his employment.

5. Defendant Anthony Griffin is a football coach at Olentangy Orange High School and serves as J.H.'s position coach. At all times relevant hereto, Coach Griffin was acting under color of state law and within the scope of his employment.

6. Defendant André Nash Jr. is the Athletic Director at Olentangy Orange High School. At all times relevant hereto, AD Nash Jr. was acting under color of state law and within the scope of his employment.

7. Defendant Wes Schroeder is the Head Football Coach at Olentangy Orange High School. At all times relevant hereto, Coach Schroeder was acting under color of state law and within the scope of his employment.

8. Defendant Ellie Ellis is the Principal of Olentangy Orange High School. At all times relevant hereto, Principal Ellis was acting under color of state law and within the scope of his employment.

9. Defendant Ryan Sparks is an Assistant Principal at Olentangy Orange High School. At all times relevant hereto, AP Sparks was acting under color of state law and within the scope of his employment.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights jurisdiction), and 20 U.S.C. § 1681 (Title IX).

11. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in Delaware County, Ohio, which is within this judicial district.

## FACTUAL ALLEGATIONS

### *A. Background*

13. J.H. is a fifteen-year-old sophomore at Olentangy Orange High School. Prior to the events described herein, J.H. had an exemplary academic record and no history of disciplinary issues.

14. J.H. is a talented athlete who participated in the Olentangy Orange High School football program. Football was a significant part of J.H.'s identity, social connections, and college aspirations.

15. The District operates under Board Policies 5517 (Anti-Harassment) and 5517.01 (Bullying and Other Forms of Aggressive Behavior), which prohibit harassment and bullying of students and establish reporting and investigation procedures.

### B. Initial Harassment and Failure to Respond (April-August 2025)

16. On or about April 3, 2025, a student slapped J.H. in the face while J.H. was recovering from a broken shoulder. The student used derogatory language toward J.H.

17. J.H.'s parents attempted to resolve the matter privately. No resolution occurred, and the student continued making derogatory comments toward J.H. through the end of the school year and into summer football training.

18. On August 3, 2025, during football practice, Defendant Coach Brady Ford shouted in front of the entire team: "You're going to let a gay dude catch a ball on you?" referring to J.H.

19. Coach Ford's statement was made loudly enough that the entire team heard it. The statement used J.H.'s perceived sexual orientation as a slur and held J.H. up to public ridicule before his teammates.

20. Immediately after Coach Ford's statement, another student repeated it in the weight room, stating that J.H. "is gay."

21. Multiple witnesses confirmed Coach Ford's statement to J.H.'s parents.

22. On August 4, 2025, J.H.'s parents met with Coach Ford prior to practice to report the inappropriate comment. They explained that the comment was inappropriate regardless of J.H.'s sexual orientation and that it gave teammates license to bully J.H.

23. Coach Ford stated he would speak with J.H. but failed to do so until August 22, nearly three weeks later, and only after another incident occurred.

24. On August 5, 2025, in retaliation for the parents' complaint about Coach Ford, a student called J.H. a "snitch" and continued harassing him throughout practice.

### C. Retaliation and Escalating Harassment (August-September 2025)

25. On August 22, 2025, during halftime of a varsity game, a student confronted J.H. with hostile language. Emotions escalated until a senior teammate intervened.

26. On August 23, 2025, Defendant Coach Anthony Griffin informed J.H. that he would sit the first quarter of the JV game as discipline for the prior night's confrontation. Coach Griffin stated that the other student would sit the first quarter of the next varsity game.

27. J.H. was benched as promised. The other student was never held out of any game. When J.H.'s parents brought this disparity to Defendant AD André Nash Jr.'s attention, Nash pushed back and defended the other student's treatment.

28. On August 25, 2025, Coach Griffin made a sexually suggestive gesture toward J.H. and instructed him: "I'm just playing, don't go tell your mom." Several players told J.H. this remark was directed at him.

29. On August 30, 2025, J.H.'s father emailed AD Nash Jr. and Head Coach Wes Schroeder requesting a meeting to discuss unequal discipline and why J.H. felt unsupported by the coaching staff. Neither AD Nash Jr. nor Coach Schroeder responded to this email.

30. On September 16, 2025, J.H.'s parents met with AD Nash Jr. to discuss their concerns about ongoing harassment and unequal discipline.

31. Following this meeting, Coach Griffin began openly ostracizing J.H. Griffin refused to coach, acknowledge, or speak to J.H. during practices and games, while actively coaching all other defensive backs.

32. Griffin's ostracism was so apparent that J.H.'s teammates began commenting: "He doesn't like you."

33. On September 13, 2025, J.H. made a game-saving play. Coach Griffin gave no acknowledgment and resisted playing J.H. further.

34. On September 18, 2025, AD Nash Jr. sent a follow-up email promising only to "continue to monitor the situation" with no corrective action against any coach or student harasser.

35. On September 19, 2025, AD Nash Jr. sent an email characterizing J.H. as having "threatened another student-athlete" and "acted with physical aggression," while declining to share any information about corrective actions taken against the other student or any coach.

### D. The September 23 Assault and Disproportionate Discipline

36. On September 23, 2025, while J.H. was getting ready for practice in the locker room, a student slapped J.H. in the face, leaving a visible mark on J.H.'s nose.

37. J.H. did not retaliate. He walked out of the locker room to retrieve his football pads.

38. When J.H. attempted to address the situation verbally, the student called J.H. a "bitch" and stated that J.H. "wasn't going to do anything about it." The student continued using derogatory language as J.H. walked to the practice field.

39. While on the field, the student continued calling J.H. derogatory names. An altercation ensued.

40. On September 24, 2025, the District suspended J.H. for five days. On information and belief, the student who initiated the assault received no suspension or other discipline.

41. On September 25, 2025, the District removed J.H. from the football program for the remainder of the season. Neither Coach Ford nor Coach Griffin faced any consequences for their conduct.

### E. Aftermath and Continuing Harm

42. On October 1, 2025, the District imposed a "safety plan" that placed all burdens on J.H.: he was required to turn in his gear, avoid certain areas, and stay away from the team.

43. The coaches who harassed J.H. remained in their positions. The students who assaulted him faced no documented discipline. The "safety plan" protected everyone except J.H.

44. Following J.H.'s removal from the team, he received threatening messages via Snapchat from teammates or former teammates.

45. On October 11, 2025, J.H. was removed from team group chats without explanation.

46. In his Biology class, the District implemented a "no-contact" arrangement without parental notice, further isolating J.H. and signaling to classmates that he was a problem.

47. A licensed mental health professional has documented that J.H. is experiencing depressive symptoms, social withdrawal, and anxiety about attending school. J.H. has expressed intent to leave the school and football entirely.

48. J.H.'s parents have retained a mental performance coach to help J.H. cope with the psychological trauma.

49. J.H.'s grades, once excellent, have begun to decline as a result of the harassment, trauma, and hostile environment.

### F. TikTok Cyberbullying and Continued Retaliation

50. In or about October 2025, a TikTok video created and circulated by one or more Olentangy Orange High School students mocked J.H., insinuated that he was "on the down-low," and used imagery and commentary tied directly to Coach Ford's August 3, 2025 slur.

51. The video was publicly accessible and was viewed by members of the school community, including Orange student-athletes. The TikTok video continued the same sex-based harassment first initiated by Coach Ford, echoed the "gay" slur he used, and intensified the hostile environment faced by J.H.

52. J.H.'s parents promptly reported the TikTok video to the District and requested that it be investigated and removed. The District took no action in response. Despite notice, the District did not initiate a Title IX cyberbullying investigation under Policy 5517.01, did not notify the family of any steps taken, and did not impose any discipline or corrective action. The District's inaction further signaled to students that harassment of J.H. would be tolerated, and it increased J.H.'s emotional distress, social isolation, and fear of retaliation.

53. The TikTok video remains part of the ongoing pattern of sex-based harassment and retaliation that forced J.H. to withdraw from school and has caused significant psychological harm.

## COUNT I
### Title IX - Hostile Educational Environment
*(Against Defendant District)*

54. Plaintiffs incorporate by reference all preceding paragraphs.

55. Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), provides that no person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

56. The District is a recipient of federal financial assistance and is subject to Title IX.

57. Coach Ford's August 3, 2025 statement using the term "gay" as a slur constitutes sex-based harassment. Sex-based harassment includes harassment based on actual or perceived sexual orientation.

58. The harassment was severe enough to deprive J.H. of access to educational opportunities, including his participation in the football program, his social connections with teammates, and his ability to attend school without fear of further harassment.

59. The District had actual knowledge of the harassment through the August 4, 2025 parent meeting with Coach Ford, the August 30, 2025 email to AD Nash Jr. and Coach Schroeder, the

September 16, 2025 meeting with AD Nash Jr., and the September 23, 2025 formal complaint to Principal Ellis, AP Sparks, and Title IX Coordinator Kim.

60. The District's response was clearly unreasonable: no corrective action was taken against Coach Ford; no discipline was imposed on student harassers for continued harassment; Coach Griffin's retaliatory ostracism was permitted to continue; and J.H. was ultimately punished for being victimized.

61. The District's deliberate indifference made J.H. vulnerable to further harassment by students, including the September 23, 2025 assault.

62. As a direct and proximate result of the District's deliberate indifference, J.H. has suffered and continues to suffer damages including loss of educational opportunity, loss of athletic participation, emotional distress, depression, anxiety, social withdrawal, academic decline, and the costs of mental health treatment. Pursuant to Cummings v. Premier Rehab Keller, P.L.L.C., 596 U.S. 212 (2022), Title IX damages are limited to economic losses and injunctive relief; emotional-distress damages are sought under Plaintiffs' Section 1983 claims.

**COUNT II**
**Title IX - Retaliation**
*(Against Defendant District)*

63. Plaintiffs incorporate by reference all preceding paragraphs.

64. Title IX prohibits retaliation against any person for making a complaint of sex discrimination or harassment.

65. J.H. and his parents engaged in protected activity by complaining about Coach Ford's sex-based harassment on August 4, 2025, and in subsequent communications with District officials.

66. Following these protected complaints, J.H. suffered a series of adverse actions: a student called him a "snitch" (August 5); J.H. was benched while the other student was not

(August 23); Coach Griffin began ostracizing J.H. (September 16-present); J.H. was suspended for five days (September 24); and J.H. was removed from the football program (September 25).

67. The temporal proximity between the protected complaints and the adverse actions, combined with the District's pattern of blaming J.H. while protecting his harassers, establishes a causal connection between the protected activity and the adverse actions.

68. As a direct and proximate result of the District's retaliation, J.H. has suffered and continues to suffer damages including loss of educational opportunity, loss of athletic participation, emotional distress, depression, anxiety, social withdrawal, academic decline, and the costs of mental health treatment.

### COUNT III
### 42 U.S.C. § 1983 - Equal Protection (Sex Discrimination)
*(Against Defendants Ford and Griffin in their Individual Capacities)*

69. Plaintiffs incorporate by reference all preceding paragraphs.

70. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from discriminating on the basis of sex, including discrimination based on actual or perceived sexual orientation.

71. Defendants Ford and Griffin were at all relevant times acting under color of state law as employees of the District.

72. Coach Ford's use of "gay" as a slur against J.H. constitutes intentional sex-based discrimination.

73. Coach Griffin's selective ostracism of J.H.--refusing to coach J.H. while coaching all other defensive backs--constitutes intentional discrimination. The discriminatory treatment intensified after J.H.'s parents complained about sex-based harassment.

74. As a direct and proximate result of Defendants' constitutional violations, J.H. has suffered and continues to suffer damages including loss of educational opportunity, loss of

athletic participation, emotional distress, depression, anxiety, social withdrawal, academic decline, and the costs of mental health treatment.

75. Defendants Ford and Griffin are not entitled to qualified immunity because it was clearly established at the time of their conduct that using homophobic slurs against students and retaliating against students for protected complaints violate the Constitution.

## COUNT IV

### 42 U.S.C. § 1983 - First Amendment Retaliation
*(Against Defendants Ford, Griffin, Nash, Schroeder, Ellis, and Sparks in their Individual Capacities)*

76. Plaintiffs incorporate by reference all preceding paragraphs.

77. The First Amendment protects the right to petition the government for redress of grievances, including complaints to school officials about misconduct.

78. J.H. and his parents engaged in protected speech by complaining about Coach Ford's harassment, Coach Griffin's retaliatory conduct, and the District's failure to protect J.H.

79. In retaliation for these protected complaints, Defendants subjected J.H. to adverse actions including asymmetric discipline, ostracism, a five-day suspension, removal from the football program, and a burdensome "safety plan."

80. The adverse actions were motivated by, and would not have occurred but for, J.H.'s and his parents' protected complaints.

81. As a direct and proximate result of Defendants' constitutional violations, J.H. has suffered and continues to suffer damages including loss of educational opportunity, loss of athletic participation, emotional distress, depression, anxiety, social withdrawal, academic decline, and the costs of mental health treatment.

## COUNT V
### 42 U.S.C. § 1983 - Procedural Due Process
*(Against Defendants Ellis and Sparks in their Individual Capacities)*

82. Plaintiffs incorporate by reference all preceding paragraphs.

83. The Due Process Clause of the Fourteenth Amendment protects students from deprivation of their property interest in public education without adequate procedural protections.

84. Under Goss v. Lopez, 419 U.S. 565 (1975), a student facing a suspension of ten days or fewer is entitled to oral or written notice of the charges, an explanation of the evidence, and an opportunity to present the student's version of events.

85. J.H. received a five-day suspension on September 24, 2025.

86. On information and belief, J.H. was not provided adequate notice of the charges against him, an explanation of the evidence against him, or a meaningful opportunity to present his version of events before the suspension was imposed.

87. As a direct and proximate result of Defendants' constitutional violations, J.H. has suffered damages including deprivation of educational opportunity and stigma from the disciplinary record.

## COUNT VI
### Intentional Infliction of Emotional Distress
*(Against Defendants Ford and Griffin in their Individual Capacities)*

88. Plaintiffs incorporate by reference all preceding paragraphs.

89. Under Ohio law, intentional infliction of emotional distress requires conduct that is extreme and outrageous, intent to cause or reckless disregard for the likelihood of causing emotional distress, and severe emotional distress.

90. Coach Ford's public use of "gay" as a slur against a fifteen-year-old student in front of his peers, and Coach Griffin's sexualized gesture followed by an instruction to conceal it from J.H.'s parents, constitute extreme and outrageous conduct.

91. This conduct was intended to cause, or was committed with reckless disregard for the likelihood of causing, emotional distress to J.H.

92. J.H. has suffered severe emotional distress as documented by a licensed mental health professional, including depression, anxiety, social withdrawal, and intent to leave school.

93. Defendants Ford and Griffin are not entitled to immunity under R.C. 2744.03(A)(6) because their conduct was undertaken with malicious purpose, in bad faith, or in a wanton or reckless manner.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Enter judgment in favor of Plaintiffs and against Defendants on all counts;

B. Award compensatory damages in an amount to be determined at trial, including damages for emotional distress, loss of educational opportunity, costs of mental health treatment, and other consequential damages;

C. Award punitive damages against the Individual Defendants in their individual capacities in an amount sufficient to punish and deter similar conduct;

D. Enter preliminary and permanent injunctive relief requiring the District to: (i) expunge J.H.'s suspension and athletics-related discipline from his permanent record; (ii) remove Coach Griffin from any supervisory role over J.H.; (iii) implement enhanced Title IX training for all athletics staff; (iv) develop and implement a neutral safety plan that does not burden J.H. disproportionately; and (v) take such other corrective action as the Court deems appropriate;

E. Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provision of law;

F. Award pre-judgment and post-judgment interest as permitted by law; and

F. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Sean L. Walton*
Sean L. Walton (0088401)
WALTON + BROWN, LLP
395 East Broad Street, Suite 200
Columbus, Ohio 43215
Phone: (614) 636-3476
Fax: (614) 423-3922
swalton@waltonbrownlaw.com

*Counsel for Plaintiffs*