**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **J.H., a minor, by his parents** | : | Case No. |
| **JOHN DOE and JANE DOE,** | : | |
| | : | Judge |
| Plaintiffs, | : | |
| | : | Magistrate Judge |
| v. | : | |
| | : | |
| **OLENTANGY LOCAL SCHOOL** | : | |
| **DISTRICT, et al.,** | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**
**AND PRELIMINARY INJUNCTION**

Plaintiffs J.H., a minor, by his parents John Doe and Jane Doe, respectfully move this Court for a Temporary Restraining Order and Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65. In support of this Motion, Plaintiffs state as follows:

**INTRODUCTION**

This case involves the systematic harassment, retaliation, and discrimination against a fifteen-year-old student-athlete, J.H., by coaches and administrators at Olentangy Orange High School. When J.H.'s parents reported that a coach publicly called their son "gay" as a slur in front of the entire football team, the District's response was not to discipline the coach, but to punish J.H.

The result: J.H. has been suspended for five days, removed from the football team, isolated from his peers through a one-sided "safety plan," and is now experiencing clinically documented depression, anxiety, and social withdrawal. He has essentially been forced to leave the school. Meanwhile, the coaches who harassed him remain in their positions, and the students who assaulted him have faced no documented discipline.

Emergency relief is necessary to prevent further irreparable harm to J.H.'s educational opportunity, mental health, and constitutional rights.

## FACTUAL BACKGROUND

The factual background is set forth in detail in the Complaint filed contemporaneously with this Motion. The key facts relevant to this Motion are summarized below:

On August 3, 2025, Coach Brady Ford shouted in front of the entire team: "You're going to let a gay dude catch a ball on you?" referring to J.H. Multiple witnesses confirmed this statement.

On August 4, 2025, J.H.'s parents reported Coach Ford's conduct. The District took no corrective action against Ford.

On August 5, 2025, a student called J.H. a "snitch" in retaliation for the complaint about Coach Ford.

On August 22-23, 2025, Coach Griffin promised to discipline both J.H. and another student equally. J.H. was benched for one quarter. The other student was never held out of any game.

On August 25, 2025, Coach Griffin made a sexually suggestive gesture toward J.H. and instructed him: "I'm just playing, don't go tell your mom."

In September 2025, after J.H.'s parents met with AD Nash Jr. to complain about ongoing harassment, Coach Griffin began openly ostracizing J.H., refusing to coach him while actively coaching all other defensive backs. Teammates noticed and commented: "He doesn't like you."

On September 23, 2025, a student slapped J.H. in the face (leaving a visible mark), called him derogatory names, and stated J.H. "wasn't going to do anything about it." An altercation ensued after the student continued the harassment on the practice field.

On September 24-25, 2025, the District suspended J.H. for five days and removed him from the football program for the season. On information and belief, the student who initiated the assault received no discipline.

On October 1, 2025, the District imposed a "safety plan" requiring J.H. to turn in his gear, avoid certain areas, and stay away from the team. The coaches who harassed him remained in their positions.

Following his removal, J.H. received threatening messages via Snapchat, was removed from team group chats, and had a "no-contact" arrangement implemented in his Biology class without parental notice.

A licensed mental health professional has documented that J.H. is experiencing depressive symptoms, social withdrawal, anxiety about attending school, and had expressed intent to leave the school and football entirely.

## LEGAL STANDARD

A party seeking a temporary restraining order or preliminary injunction must establish: (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm absent the injunction; (3) that the balance of hardships favors the movant; and (4) that the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

In the Sixth Circuit, these factors are balanced, with no single factor being dispositive. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997).

## ARGUMENT

I. **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS**
   A. **Title IX Hostile Environment**

To establish a Title IX hostile environment claim against a school district, a plaintiff must show that: (1) the plaintiff was subjected to sexual harassment; (2) the harassment was severe, pervasive, and objectively offensive; (3) the school had actual knowledge of the

harassment; and (4) the school was deliberately indifferent to it. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).

Coach Ford's public use of "gay" as a slur constitutes sex-based harassment. The District had actual knowledge through the August 4, 2025 parent meeting and subsequent communications. The District's response was deliberately indifferent: no corrective action against Ford, no discipline for continued harassment, and ultimately punishment of J.H. for being victimized.

Under *Doe v. Metro. Gov't of Nashville & Davidson County*, 35 F.4th 459 (6th Cir. 2022), the Sixth Circuit recognizes a "before" vulnerability theory in K-12 Title IX cases: a school district can be liable for its pre-notice failures if those failures made the student vulnerable to subsequent harassment. Here, the District's failure to address Coach Ford's harassment and Coach Griffin's retaliatory ostracism created the conditions that made J.H. vulnerable to the September 23 assault.

### B. Title IX Retaliation

Title IX prohibits retaliation against individuals who report sex discrimination. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005). To establish a prima facie case, a plaintiff must show: (1) protected activity; (2) adverse action; and (3) a causal connection.

Here, J.H.'s parents engaged in protected activity by complaining about Coach Ford's sex-based harassment on August 4, 2025. The adverse actions followed in rapid succession: the "snitch" comment (August 5); asymmetric discipline (August 23); Coach Griffin's ostracism (September 16-present); five-day suspension (September 24); and season removal (September 25). The temporal proximity alone supports an inference of causation, and the pattern of blaming J.H. while protecting his harassers reinforces it.

### C. Section 1983 Claims

Plaintiffs have also established a likelihood of success on their Section 1983 claims for Equal Protection and First Amendment retaliation. Coach Ford's homophobic slur and Coach

Griffin's selective ostracism constitute intentional sex-based discrimination. The adverse actions taken against J.H. after his parents' protected complaints constitute unconstitutional retaliation.

The individual defendants are not entitled to qualified immunity. It was clearly established at the time of their conduct that using homophobic slurs against students and retaliating against students for protected complaints violate the Constitution.

## II. PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT RELIEF

The Sixth Circuit has recognized that the loss of constitutional rights, even for minimal periods of time, constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Here, J.H.'s constitutional rights continue to be violated every day the current conditions persist.

Beyond constitutional injury, J.H. is suffering ongoing, concrete harm that cannot be remedied through money damages:

> **Lost Athletic Season**: J.H. has already lost the 2025 football season. Each day that passes is a day of athletic development, team bonding, and scholarship opportunity that cannot be recovered.
> **Mental Health Deterioration**: Clinical documentation shows J.H. is experiencing depression, anxiety, and social withdrawal that are worsening. The District's current "safety plan" isolates J.H. and reinforces the message that he is the problem.
> **Educational Disruption**: J.H.'s grades are declining. He has expressed intent to leave the school. The "no-contact" arrangement in his Biology class further isolates him.
> **Ongoing Safety Concerns**: J.H. has received threatening messages via Snapchat. The District's response protects everyone except J.H.

In addition to these harms, J.H. has been subjected to cyberbullying through a TikTok video created by members of the Olentangy Orange High School community, which mocked his perceived sexual orientation and directly echoed Coach Ford's August 3 slur. The District was notified of the video and took no action to remove it, investigate it, or provide protection under Policy 5517.01.

The continued online presence of this video exacerbates J.H.'s emotional distress, poses ongoing reputational harm, and reinforces the message that reporting harassment results only in further retaliation. Online harassment of a minor is irreparable harm, and judicial intervention is necessary to stop the escalation.

### III. THE BALANCE OF HARDSHIPS FAVORS PLAINTIFFS

The balance of hardships weighs heavily in Plaintiffs' favor. J.H. has already lost his football season, is suffering documented psychological harm, and faces ongoing retaliation and isolation. By contrast, the relief Plaintiffs seek imposes minimal burden on Defendants:

- Removing Coach Griffin from supervisory contact with J.H. does not require termination; it requires only reassignment of duties.
- Developing a neutral safety plan requires the District to do what it should have done from the beginning: protect J.H. without burdening him.
- Preserving records and producing the Title IX investigation file involves no hardship; it simply requires compliance with litigation preservation obligations.
- Record correction (recoding the suspension) is an administrative task that serves accuracy and fairness.

### IV. THE PUBLIC INTEREST FAVORS RELIEF

The public has a strong interest in ensuring that schools do not tolerate sex-based harassment, do not retaliate against students who report misconduct, and do provide safe educational environments. See *Davis*, 526 U.S. at 648 (Title IX exists to protect students from harassment that denies them equal access to education).

The public interest also favors enforcement of constitutional rights. When a school district punishes the victim and protects the harassers, the message to students is clear: do not report misconduct. That message is contrary to the public interest.

### RELIEF REQUESTED

Plaintiffs respectfully request that this Court enter a Temporary Restraining Order and Preliminary Injunction. Although J.H. has withdrawn from Olentangy Orange High School and

is currently in interim educational placement, record correction, neutral safety obligations, and staff-contact restrictions remain necessary to protect J.H.'s rights upon any future enrollment and to prevent further retaliation:

1. **Requiring Defendant District to remove Defendant Griffin from any supervisory contact with J.H. or oversight of J.H.'s academic or athletic activities pending resolution of this action;**
2. **Requiring Defendant District to develop and implement a neutral safety plan that does not burden J.H. disproportionately, in consultation with Plaintiffs and subject to Court approval;**
3. **Requiring Defendant District to preserve all documents, communications, and electronically stored information related to J.H., the incidents described in the Complaint, and any Title IX investigation;**
4. **Requiring Defendant District to produce to Plaintiffs' counsel, within seven (7) days, any Title IX investigation file related to J.H. or the incidents described in the Complaint;**
5. **Requiring Defendant District to recode or expunge J.H.'s five-day suspension and any athletics-related discipline from his permanent record pending resolution of this action;**
6. **Enjoining Defendants from taking any retaliatory action against J.H. or his parents during the pendency of this action; and**
7. **Granting such other and further relief as the Court deems just and proper.**

## CONCLUSION

J.H. is a fifteen-year-old boy who was publicly humiliated by his coach, ostracized for reporting it, assaulted by peers, and then punished by his school. The adults who were supposed to protect him failed. The system that was supposed to provide recourse instead made him the villain. He is now suffering clinically documented depression and anxiety, his grades are declining, and he wants to leave the school entirely.

This Court has the power to begin correcting these wrongs. Plaintiffs respectfully request that the Court grant this Motion and enter the relief requested herein.

        Respectfully submitted,


/s/ Sean L. Walton
Sean L. Walton (0088401)
WALTON + BROWN, LLP
395 East Broad Street, Suite 200
Columbus, Ohio 43215
Phone: (614) 636-3476
Fax: (614) 423-3922
swalton@waltonbrownlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2025, a copy of the foregoing Motion for Temporary Restraining Order and Preliminary Injunction was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Sean L. Walton
Sean L. Walton (0088401)